UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
╔══════════════════════════════╗
║ USDC SDNY                    ║
║ DOCUMENT                     ║
║ ELECTRONICALLY FILED         ║
║ DOC #: _____         ║
║ DATE FILED: 07/14/2022       ║
╚══════════════════════════════╝
```

STEVEN B. THOMAS,

                          Plaintiff,

  -against-

C.O. HURLEY HPOPKINS, C.O. BARRY NORFLEET, C.O. SIMUN MATESIC, C.O. HERIBERTO NIEVES, and SGT. NICHOLS DREWES,

                          Defendants.

No. 20 Civ. 9709 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    *Pro se* Plaintiff Steven B. Thomas, an inmate in the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action under 42 U.S.C. § 1983, alleging that correctional officers were deliberately indifferent to his medical condition because they repeatedly interrupted his medical treatment for hemophilia, and that they violated his medical privacy by disclosing his medical condition amongst themselves and others. (Am. Compl. at 5–10, ECF No. 32.) He sues Defendants C.O. Hurley Hopkins, C.O. Barry Norfleet, C.O. Simun Matesic, C.O. Heriberto Nieves, and Sgt. Nichols Drewes, all of whom are (or were, in the case of Matesic and Norfleet) employees of DOCCS. (*Id.*)

    Presently pending before the Court is Hopkins, Matesic, Nieves, and Drewes' (collectively, "Defendants") motion to dismiss[1] *pro se* Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 38.) For the following reasons, the Court GRANTS Defendants' motion to dismiss.

---

[1] Despite multiple attempts, the New York State Attorney General's Office ("AG's Office") was unable to contact Norfleet with respect to his representation in this action. (*See* ECF Nos. 20 & 22.)

**BACKGROUND**

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.

The relevant conduct here occurred during *pro se* Plaintiff's previous period of incarceration at the Sing Sing Correctional Facility.[2] (*See* Am. Compl. at 17.) *Pro se* Plaintiff alleges that between March 2016 and January 2020, Defendants and Norfleet disrupted his medical treatment by holding the door open during treatment, speaking with medical personnel, and not allowing *pro se* Plaintiff to immediately speak to a nurse after returning from a medical visit. (*Id.* at 3.) *Pro se* Plaintiff further alleges that Defendants and Norfleet violated his medical privacy by disclosing his private medical information amongst themselves and other incarcerated individuals. (*Id.* at 5.) He claims to have suffered pain, trauma, and complications due to delays in treatment and ridicule from other incarcerated individuals. (*Id*. at 5–6.)

**I.    Alleged Disruptions of Medical Treatment**

*Pro se* Plaintiff alleges that when he was incarcerated at Sing Sing, he needed to attend outside medical trips to the Mount Vernon Hospital Ward for treatment of his hemophilia, which if not properly treated on time, will cause him significant trauma or even death. (*Id.* at 5.) Upon arriving to the hospital, a nurse or doctor would treat him with a blood infusion in a private room. (*Id.*) *Pro se* Plaintiff claims that Matesic would enter this room to deliberately disrupt and delay his treatment to intentionally cause him great pain. (*Id.*) In one instance, *pro se* Plaintiff claims that doctors and nurses treating him had to ask Matesic to exit the examination room to begin with the treatment, but that Matesic refused. (*Id.* at 7.)

---

[2] As of March 16, 2022, *pro se* Plaintiff is currently residing at the Greene Correctional Facility in Coxsackie, New York. (*See* ECF Nos. 43 & 44.)

*Pro se* Plaintiff further claims that between November and December 2018, Nieves, Norfleet, and Hopkins would deliberately deny him medical access by refusing to let him speak to Sing Sing's medical staff to talk about his treatment upon returning to the facility. (*Id.* at 6.) When *pro se* Plaintiff asked them about their refusal, the correctional officers replied that they were following orders from their supervisor, Drewes, and that *pro se* Plaintiff was not allowed to speak with medical staff if it was not an emergency. (*Id.*)

## II.    Alleged Violations of Medical Privacy

*Pro se* Plaintiff claims that from March 2016 to March 2018, Hopkins would enter the room where *pro se* Plaintiff received his treatment and begin to ask the staff questions about *pro se* Plaintiff and his treatment. (*Id.* at 5.) Hopkins would ask the nurses questions such as, "how long does this medicine take to administer form start to finish?"; "how long is the recovery time thereafter?"; why does it take so long?"; and "why does he have to get this?" Hopkins would then take notes of the answers on paper. (*Id.*) When *pro se* Plaintiff asked Hopkins for the reason behind his questions, Hopkins replied that he was just following orders from his supervisor, Drewes. (*Id.*) *Pro se* Plaintiff alleges that Hopkins took his notes to maliciously disclose *pro se* Plaintiff's medical condition to other prisoners. (*Id.* at 7.)

*Pro se* Plaintiff also alleges that between February and March 2019, Defendants began to disclose his medical condition and treatment amongst themselves, fellow staff, and other inmates for entertainment through gossip. (*Id.* at 6.) As a result, *pro se* Plaintiff claims that he has been targeted with violence and harassment inside Sing Sing. (*Id.*)

*Pro se* Plaintiff finally claims that Drewes, as the transportation supervisor at Sing Sing, was aware of the other correctional officers' violations because he interviewed *pro se* Plaintiff after he submitted a grievance of some kind. (*Id.* at 7.) *Pro se* Plaintiff claims Drewes failed to remedy any of the wrongs he suffered. (*Id.*)

### III. Procedural Background

On November 17, 2020, *pro se* Plaintiff filed his original Complaint. (Compl., ECF No 2.) On December 21, 2020, the Court issued a *Valentin v. Dinkins* order for the AG's Office to identify the named corrections officers in the Complaint to effectuate service of process. (ECF No. 7.) On February 19, 2021, the AG's Office filed a response to the Court's *Valentin* order. (ECF No. 9.) After Defendants were served, the AG's Office requested several extensions so that it could communicate with Defendants, including Norfleet, with respect to their representation in the instant action, which the Court granted. (*See* ECF Nos. 18–23.) While the AG's Office was able to communicate with Defendants, it was unable to reach Norfleet. (ECF No. 23.) On July 21, 2021, Defendants first sought leave to file a motion to dismiss the original Complaint, which the Court subsequently granted and for which it issued a briefing schedule. (ECF Nos. 25 & 26.)

On October 1, 2021, *pro se* Plaintiff filed his Amended Complaint. (Am. Compl., ECF No. 23.) Two weeks later, Defendants sought leave to file a motion to dismiss the Amended Complaint, which the Court subsequently granted and for which it issued a briefing schedule. (ECF Nos. 33 & 34.) Defendants filed their own briefing and *pro se* Plaintiff's on January 14, 2022: their notice of motion (ECF No. 38), their memorandum in support ("Motion," ECF No. 39), *pro se* Plaintiff's response in opposition ("Response in Opposition," ECF No. 40), and their reply ("Reply," ECF No. 41).

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to

4

relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. *Pro se* litigants are not exempt from these pleading standards, but courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009). *Pro se* complaints are read with a "special solitude" to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and citations omitted).

## II. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

**DISCUSSION**

The Court liberally construes *pro se* Plaintiff's Amended Complaint to assert two claims under 42 U.S.C. § 1983: (i) a deliberate indifference claim for violations of his Eighth Amendment right to be free from cruel and unusual punishment; and (ii) claim for violations of his Fourteenth Amendment substantive due process right to privacy of medical information. (Am. Compl. at 5–10.) Defendants argue that the Court should dismiss the Amended Complaint for failure to state a claim, and alternatively, based on qualified immunity. (*See* Mot. at 7–16.) The Court addresses those arguments in that order.

But before addressing the merits of Defendants' motion, although Norfleet has failed to file a responsive pleading to *pro se* Plaintiff's Amended Complaint after the AG's Office unsuccessfully attempted to communicate with him on multiple attempts, the Court notes that *pro se* Plaintiff's allegations against Norfleet are exactly the same as those he asserts against his other co-defendants. Hence, given that Defendants' arguments in the instant motion are equally applicable to *pro se* Plaintiff's allegations against Norfleet, and that *pro se* Plaintiff has been given notice and an opportunity to be heard on such arguments, the Court will also *sua sponte* determine below whether dismissal of the claims against Norfleet is warranted. *See Citadel Mgt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000) (citing *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994)).

**I.    *Pro se* Plaintiff's deliberate indifference claim under the Eighth Amendment must be dismissed**

Defendants first argue that *pro se* Plaintiff fails to state a deliberate indifference claim under the Eighth Amendment because the allegations in the Amended Complaint fail to establish the objective and subjective components necessary for such claim. Specifically, Defendants contend that *pro se* Plaintiff fails to sufficiently allege that there was a sufficiently serious delay

in medical treatment to establish the objective component, and that Defendants acted with a sufficiently culpable state of mind to establish the subjective component. (Mot. at 7–9.) After due consideration, the Court agrees.

Deliberate indifference under the Eighth Amendment is evaluated under a two-pronged test comprised of both objective and subjective components. *See Darnell v. Pineiro*, 849 F.3d 17, 32-35 (2d Cir. 2017); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). "[T]o establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" *Darnell*, 849 F.3d at 30 (citations omitted). To meet the objective prong, a plaintiff must assert that the alleged medical need is a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain").

The subjective component requires a prisoner to show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). "That is, the official must 'know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hill*, 657 F.3d at 122 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (internal alterations omitted)).

Here, even when liberally construed in *pro se* Plaintiff's favor, the allegations in the Amended Complaint fail to establish the objective and subjective components of a deliberate

indifference claim. First, the Amended Complaint is devoid of any facts indicating whether the delays Defendants caused in his medical treatment (*i.e.*, interruptions in treatment, questions to the medical staff, and refusing to allow *pro se* Plaintiff to speak to medical staff again right after receiving treatment and upon returning to Sing Sing) were objectively serious delays that prevented medical staff from administering treatment to *pro se* Plaintiff. At best, even when drawing all inferences in his favor, *pro se* Plaintiff only alleges trivial delays in his medical treatment. (*See* Am. Compl. at 5–6, & 14.)

To be sure, *pro se* Plaintiff alleges that he suffers from Hemophilia A, a congenital bleeding disorder which constitutes a serious medical condition. (*See* Am. Compl. at 17); *see also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("'Because 'society does not expect that prisoners will have unqualified access to health care,' a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care.") (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). However, *pro se* Plaintiff "does not [allege] that . . . [D]efendants ignored his [hemophilia] by generally failing to provide appropriate treatment, conduct which may well violate the Eighth Amendment." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). Rather, his "claim is based on short-term interruptions in the otherwise adequate treatment which he was receiving for his underlying medical condition." *Id.*

As the Second Circuit has previously held,

> When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in "objective terms, sufficiently serious," to support an Eighth Amendment claim.

*Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). In other words, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than

the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* at 186 (citing *Chance*, 143 F.3d at 702–03)).

For example, courts in this Circuit have held that the denial of a single dose, or even several doses, of a needed medication is insufficient, without more, to establish a serious delay in treatment under the Eighth Amendment. *See, e.g.*, *Schlosser v. Carter*, 3:20-CV-434 (SRU), 2021 WL 1124280, at *9 (D. Conn. Mar. 24, 2021) (dismissing deliberate indifference claim after finding plaintiff failed to establish sufficiently serious deprivation of medical treatment because he did not allege that missing a dose exposed him to a risk of future harm, and instead, only alleged that he missed a single dose of medication and suffered short-term symptoms as a result); *Smith*, 316 F.3d at 188–89 (affirming denial of motion for new trial for Eighth Amendment violation where plaintiff "presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health"); *Youngblood v. Artus*, 2011 WL 6337774, at *18 (N.D.N.Y. Dec. 19, 2011) (granting motion to dismiss deliberate indifference claim where the defendant "failed to give [the plaintiff] a single dose of his seizure medication" and the plaintiff did not specify any resulting harm); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (dismissing claim of deliberate indifference based on "a delay of several days in dispensing plaintiff's hypertension medication" absent evidence that "the delay gave rise to a significant risk of serious harm"); *Evans v. Bonner*, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (granting summary judgment for defendant on claim that medication was not timely distributed even where plaintiff alleged that he had suffered "aches, pains and joint problems" due to withdrawal because "the alleged injury to the plaintiff resulting from not getting his medicine on time does not rise to a sufficiently serious level.").

Here, even when drawing all inferences in his favor, *pro se* Plaintiff fails to allege any facts

indicating that the delays caused by Defendants' conduct gave rise to a significant risk of serious harm. At best, *pro se* Plaintiff only alleges that he suffered some short-term pain after Defendants refused to let him speak to medical staff again right after receiving treatment and returning to Sing Sing, (*id.* at 6), which is still insufficient to establish a serious deprivation of medical treatment.

Furthermore, *pro se* Plaintiff also fails to sufficiently establish the subjective component of his deliberate indifference claim because he fails to allege any facts from which one could reasonably draw an inference that Defendants knew that their conduct posed a substantial risk of serious harm to *pro se* Plaintiff and deliberately disregarded such risk. *See Hill*, 657 F.3d at 122 (quoting *Farmer*, 511 U.S. at 837)).

Accordingly, the Court concludes that *pro se* Plaintiff fails to state his deliberate indifference claim, and dismisses such claim against all Defendants, including Norfleet, accordingly.

## II.     *Pro se* Plaintiff's substantive due process claim under the Fourteenth Amendment must also be dismissed

Defendants next argue that *pro se* Plaintiff fails to state a substantive due process claim under the Fourteenth Amendment because he fails to sufficiently allege that (i) the seriousness of his medical condition and the level of social intolerance gives rise to a constitutionally-protected privacy right; and (ii) Defendants' conduct in disclosing his medical condition was not reasonably related to legitimate penological interests or that it was more than minimal intrusions into his medical condition. (*See* Mot. at 9–13.) After due consideration, the Court agrees.

A constitutional right to medical privacy is recognized only in very limited circumstances. In general, "the interest in the privacy of medical information will vary with the condition," and only the most serious privacy intrusions are of constitutional significance. *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). In the context of the prison setting, because inmates have reduced privacy interests, "decisive weight" is given to legitimate penological interests. *Hancock v. City of*

*Rensselaer*, 882 F.3d 58, 66 n.3 (2d Cir. 2018). Because "decisive weight" is given to legitimate penological interests, only intensely private medical conditions implicate the Due Process clause in the prison setting. *Compare id.* at 67 (finding weak privacy interests in fibromyalgia that could be overrun by moderately strong government interest), *with Powell*, 175 F.3d 107 (finding the intense personal nature of an HIV diagnosis could implicate the Due Process clause in the prison setting).

Accordingly, a prison official's conduct that "impinges on inmates' constitutional rights" is valid only if it "is reasonably related to legitimate penological interests." *Powell*, 175 F.3d at 112 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). For instance, the disclosure of an incarcerated individual's confidential medical information, as long as it is related to legitimate penological interests and not gratuitous, is not a constitutional breach. *Id.* at 112; *see also Hancock*, 882 F.3d at 68 (government actions in breaching privacy may not be arbitrary or malicious).

Here, *pro se* Plaintiff suffers from Hemophilia A, which when compared to other medical conditions the Second Circuit has analyzed, is more analogous to medical conditions with lesser privacy interests based on its seriousness and level of social intolerance—such as fibromyalgia, *Hancock*, 882 F.3d at 67—and not to those that are intensely private and would give rise to a constitutionally-protected privacy right—such as HIV, *Powell*, 175 F.3d 107. As such, the Court is of the view that these lesser privacy interests in *pro se* Plaintiff's medical condition could be overrun by moderately strong government interests. *See Hancock*, 882 F.3d at 67.

With that in mind, even when taking his allegations as true, *pro se* Plaintiff fails to plausibly allege that Defendants violated his medical privacy because he fails to allege how Defendants' conduct was arbitrary and malicious instead of consisting of minimal intrusions into his medical privacy that were reasonably related to legitimate penological interests.

For example, *pro se* Plaintiff alleges that Hopkins asked medical staff multiple questions about his Hemophilia and treatment, and took notes of the answers. (*See* Am. Compl. at 5.) But *pro se* Plaintiff only alleges in a conclusory fashion that Hopkins did so to "maliciously disclose" them to other prisoners. (*Id.* at 7.) Similarly, *pro se* Plaintiff merely alleges in a conclusory fashion that Defendants disclosed his medical condition amongst themselves, fellow staff, and other inmates for entertainment through gossip. (*Id.* at 6); *see also Iqbal*, 556 U.S. at 678 (a complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (quoting *Twombly*, 550 U.S. at 557)).

At best, the only relevant non-conclusory allegation *pro se* Plaintiff provides in his Amended Complaint is the one concerning how Hopkins disclosed his Hemophilia in a single statement to other inmates on February 25, 2019. (*Id.* at 19 (Torres Affidavit)). Specifically, *pro se* Plaintiff provides the affidavit of a fellow inmate who attests to the following:

> On February 25th 2019[,] I attended a trip to the medical facility at MT. Vernon Hospital Ward. After I was finished with my appointment with my doctor[,] I was placed in a waiting room with other Sing Sing inmates that [were] also finished with their appointments and were ready to leave. This is when Officer Hopkins came into the room and stated we [were] all waiting for [*pro se* Plaintiff,] the hemophilliac[,] to finish getting his factor because he can bleed to death if he doesn[']t. This comment was made in the presence of other inmates. I then began to ask the officer so how long is that going to take until[] we can leave, Officer . . . Hopkins replied he [did] not know but he [would] find out[.]

(*Id.*)

Yet, by his affidavit, the fellow inmate merely states that Hopkins, who at the time was transporting other inmates who were also medically treated at the Mount Vernon Hospital Ward, was explaining to these other inmates the seriousness and importance of waiting for *pro se* Plaintiff to finish receiving his treatment—which was the reason behind the group's delay in returning to Sing Sing. (*Id.*) Hence, even when drawing all inferences in *pro se* Plaintiff's favor, this single

non-conclusory allegation fails to plausibly establish that Hopkins's disclosure of *pro se* Plaintiff's medical condition was arbitrary or malicious and not reasonably related to legitimate penological interests. If anything, the opposite is true.

Accordingly, the Court concludes that *pro se* Plaintiff fails to state his substantive due process claim, and dismisses such claim against all Defendants, including Norfleet, accordingly.[3]

III.    **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

*Pro se* Plaintiff has already amended once, after having the benefit of a pre-motion letter from Defendants stating the grounds on which they would move to dismiss. (ECF Nos. 25.) Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance*

---

[3] Because the Court has already dismissed the entirety of the Amended Complaint, the Court need not address Defendants' arguments on qualified immunity and Drewes' lack of personal involvement.

*Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, *pro se* Plaintiff has not otherwise suggested that he is in possession of facts that would cure the deficiencies that Defendants highlighted in the instant motion and that the Court highlighted in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *see also Twohig*, 519 F. Supp. 3d at 169 (dismissing substantially similar claims involving vanilla flavoring in soymilk with prejudice and without leave to amend because plaintiff had already amended once after having the benefit of a pre-motion letter from defendant stating the grounds on which it would move to dismiss). Accordingly, the Court dismisses the Amended Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss (ECF No. 38) and DISMISSES Plaintiff's Amended Complaint with prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 38 and this action, to enter judgment accordingly, and to close the case. The Clerk of the Court is further directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at his address listed on ECF and file proof of service on the docket.

Dated: July 14, 2022  
White Plains, NY

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge